UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H. JULIAN HILL and LISA HILL,

    Plaintiffs,

                                    Case No. 08-14969

v.

                                    HON. MARIANNE O. BATTANI

U.S. AIRWAYS, INC.,

    Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Before the Court is Defendant U.S. Airways' Motion for Summary Judgment. (Doc. 19). In the amended complaint Plaintiffs H. Julian Hill ("Mr. Hill") and Lisa Hill ("Mrs. Hill") assert claims of discrimination (Count 1), violation of their civil rights (Count 2), false arrest (Count 3), intentional and negligent infliction of emotional distress (Counts 4 and 5), and negligence (Count 6). (Doc. 22). For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment.

### II.   STATEMENT OF FACTS

Mr. Hill testified in a deposition that he and his wife vacationed in St. Thomas in March 2008. They were flying to St. Thomas on March 20 and returning on March 24. The incident giving rise to this suit occurred during their flight to St. Thomas.

According to Mr. Hill, the captain advised the passengers to bring their seats to an upright position as the plane was preparing to take off. Mr. Hill's seat was broken, however, and he could not adjust his seat. He told a flight attendant that his seat was broken, and the flight attendant allowed him to remain in his seat. The plane took off without incident.

Mr. Hill testified that as the plane was preparing to land, one of the flight attendants — who he later learned to be Phillip Pratapas — wanted Mr. Hill to switch seats and "hovered over him . . . yelling in an aggressive manner." Pratapas yelled, "Dude, you got to move, Dude, you got to move." Mr. Hill responded, "What are you talking about? I've been sitting here this whole time. Why would you tell me to move?" He then informed Pratapas that he would like his wife to be moved with him because she was pregnant and afraid of flying, but Pratapas just kept repeating that Mr. Hill had to move. Mr. Hill felt intimidated because Pratapas was "big," and he thought Pratapas might pull him out of his seat. Therefore, he agreed to move and was given an aisle seat about three rows in front of his wife.

Mr. Hill stated that after he was moved to his new seat, he asked Robert Lambert, a passing flight attendant, for a pen. Lambert provided a pen, and Mr. Hill asked for Pratapas's name. Lambert "snatched" the pen out of Mr. Hill's hands and went to the back of the plane. As Lambert was going to the back of the plane he "kind of slightly stubbed [Mr. Hill's] foot," which was in the aisle because Mr. Hill was turned in his seat to look at his wife. Lambert subsequently returned and handed Mr. Hill a written warning. Mr. Hill asked what it was, and Lambert said that it was for kicking him. Mr. Hill responded, "That's bullshit. I didn't kick you. You tripped over my foot. This is

2

fucking ridiculous. I can't believe this shit." The plane subsequently landed and as Mr. Hill was collecting his bags at the baggage claim, he saw one of the other flight attendants from the plane point him out to the police. The police then approached and detained him.

Andrea Pope, one of the flight attendants on the flight, testified that she learned during take off that Mr. Hill's seat was broken. She told Mr. Hill that she would take care of it after take off, and she told the other flight attendants to let Mr. Hill stay in his seat and that they would just move him before landing.

Linda Zaneski, who appears to have been another passenger on the flight, testified that Mr. Hill was visibly upset when the flight attendant asked him to move. She also stated that another passenger was "egging [Mr. Hill] on" by saying that he was "with" Mr. Hill and that the service "sucks." Zaneski thought that the flight attendant's demeanor and customer service skills towards Mr. Hill were unacceptable.

Lambert testified that passengers are not allowed to sit in broken seats during taxi, take-off, or landing because reclined seats impede other passengers from evacuating the plane in the case of an emergency. Lambert stated that when he gave the pen to Mr. Hill and he was asked for Pratapas's name, he told Mr. Hill that he could not give out flight attendant names, but that Mr. Hill could write down the flight number and the fact that the flight attendant in question was the "C flight attendant." As Lambert walked away, Mr. Hill said something about his passenger's bill of rights and kicked Lambert in the leg. Lambert did not actually see Mr. Hill's foot kick him, but he saw Mr. Hill "jerk" and "lunge" as he felt his leg being kicked. Lambert stated that although it

was possible that Mr. Hill had been acting inadvertently, he did not believe it was inadvertent because of the way Mr. Hill lunged. Lambert was not injured by the kick.

Lambert testified that after he arrived at the back of the plane another flight attendant stated that they needed to give Mr. Hill a passenger misconduct report form because the kick had constituted physically abusive behavior. When he gave the form to Mr. Hill, Mr. Hill crumpled the form up, threw it on the floor, and cursed. Lambert picked up the paper, returned it to him, and told him that he needed to read it. Mr. Hill again cursed and threw the paper on the floor. Lambert picked the paper up a second time, handed it to him again, and left to go to his seat.

An incident report from Russell Smith, an officer with the Virgin Islands Port Authority, indicated that he responded to a request for security by the flight's flight attendants. While talking to Mr. Hill at the baggage claim, Mr. Hill turned his body away from him. Smith placed his hand on Mr. Hill's arm in order to turn Mr. Hill toward him, and Mr. Hill's "right arm tensed (muscle) and twisted . . . away." Smith advised Mr. Hill that based on his actions, there was an officer safety issue. He placed Mr. Hill in handcuffs and told him that he was not under arrest, but that he was being handcuffed for officer safety. Smith stated that his subsequent investigation indicated that Mr. Hill should have been assigned to a different seat prior to the flight's departure because there were eight vacant seats on the flight. Smith also believed that the incident would have been avoided if the flight crew had arranged for Mr. Hill to be moved to different seats with his wife.

David Funk, an aviation security and operations consultant hired by Plaintiffs, testified that he reviewed the evidence in this case and that the crew on the flight

committed serious violations of FAA rules and regulations by allowing Mr. Hill to remain in a broken seat during takeoff, overreacting to Mr. Hill's complaints, and falsely reporting a security threat to the police. Funk believes that the flight crew's actions may have been an attempt to cover up their violations of safety rules.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

### IV. ANALYSIS

*1. Discrimination Claim*

In cases where the plaintiffs are claiming that their rights under 42 U.S.C. § 1981 were violated by racial discrimination in a commercial establishment, the *McDonnell-Douglas* burden shifting analysis is applicable if circumstantial evidence is used. Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 868 (6th Cir. 2001); see Keck v.

Graham Hotel Sys., Inc., 566 F.3d 634, 639 (6th Cir. 2009).  Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff must first make a prima facie case of discrimination.  Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007).  To make out a prima facie claim of racial discrimination in a commercial establishment, the plaintiff must prove:

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

Christian, 252 F.3d at 872.

If the plaintiff establishes a prima facie case, a presumption that the defendant discriminated against the plaintiff arises, and the defendant then bears the burden of putting forth a "legitimate, nondiscriminatory reason" for the complained of adverse treatment.  Wright v. Murray Guard, Inc., 455 F.3d 702, 706 (6th Cir. 2006) (citation omitted).  If the defendant satisfies this burden, the presumption of discrimination disappears and the plaintiff must show that the defendant's proffered nondiscriminatory reason was a pretext for discrimination.  Id. at 706-07.  Throughout this burden-shifting framework, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that he suffered illegal discrimination.  Id. at 707.

The parties dispute whether Mr. Hill has made out a prima facie case by offering evidence that a similarly situated passenger of a different race was treated differently

from him.  The Court finds that Mr. Hill's claim fails because although he points to a passenger that was treated differently from him, he and the passenger were not similarly situated.

Mr. Hill's response to U.S. Airways' motion asserts that Zaneski described a Caucasian passenger on the flight who was upset with the manner in which flight attendant Russek spoke to him when she came by with the food cart.  (See doc. 27 at 6).  Mr. Hill's brief states that the passenger became loud and upset and that he discussed his complaints with other passengers in his area.  Mr. Hill's brief also contends that Lambert testified that he heard the commotion from this passenger from 20 feet away.

As an initial matter, the excerpts of the depositions Mr. Hill has provided to the Court do not include the aforementioned testimony.  Nevertheless, U.S. Airways does not dispute Mr. Hill's assertions about this other passenger, and the Court finds that Mr. Hill's claim fails even if these assertions are accepted as true.  In particular, Mr. Hill's claim fails because he does not claim, and has not offered any evidence indicating, that this passenger refused to promptly move from a broken seat when directed to do so by the flight crew, swore at a flight attendant, or had physical contact with a flight attendant that the flight attendant believed to be a kick.  Accordingly, the other passenger was not similarly situated to Mr. Hill.  See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998) (indicating that to be similarly situated, individuals must be

similarly situated "in all *relevant* respects"). Therefore, Plaintiffs have failed to make out a prima facie case of discrimination.[1] See Christian, 252 F.3d at 872.

As Mr. Hill has not made out a prima facie case of racial discrimination, the Court grants U.S. Airways' request for summary judgment of this claim.

*2. Title 42 U.S.C. § 2000d Claim*

Under 42 U.S.C. § 2000d, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

As already discussed, Plaintiffs have not shown that Defendant discriminated against Mr. Hill on account of his race. Furthermore, Plaintiffs have not shown that U.S. Airways is a recipient of Federal financial assistance. See U.S. Dept. of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 610-12 (1986). Accordingly, the claim under 42 U.S.C. § 200d fails, and the Court grants U.S. Airways' request for summary judgment of this claim.

---

[1] A plaintiff need not show that a similarly situated individual received different treatment if the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. See Christian, 252 F.3d at 872. But, Mr. Hill does not contend that he received such treatment, and the evidence indicates that he did not receive such treatment. See id. at 871 (indicating that factors relevant to whether conduct qualifies as being markedly hostile include whether the conduct "is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination").

*3. Tort Claims*

As an initial matter, U.S. Airways contends both that 49 U.S.C. § 44941 makes it immune from Plaintiffs' tort claims, and that those claims are preempted by 49 U.S.C. § 41713(b)(1).  The Court need not address these contentions, however, because Plaintiffs have failed to create a genuine issue of material fact as to any of their tort claims.

i. False Arrest

"A false arrest is an illegal or unjustified arrest."  Lewis v. Farmer Jack Div., Inc., 415 Mich. 212, 218 (1982).  This claim fails because Mr. Hill was not arrested.  The evidence shows that Mr. Hill was not placed under arrest but instead was placed in handcuffs solely due to officer safety concerns.

ii. Intentional Infliction of Emotional Distress

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 577 (2004) (quotation omitted).  "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 608-09 (1985) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j).  Accordingly,

> Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Graham v. Ford, 237 Mich. App. 670, 674 (1999).

The conduct in this case simply is not sufficiently extreme or outrageous to amount to the intentional infliction of emotional distress. Mr. Hill initially refused to leave his seat despite being told he had to do so by a flight attendant. After he moved to a different seat, his foot was out in the aisle and contacted the foot of another flight attendant, who tripped over it after he had refused to give Mr. Hill the name of one of the other flight attendants. That flight attendant believed that Mr. Hill tripped him on purpose and gave Mr. Hill a written warning, at which point Mr. Hill began yelling profanities at the flight attendant. The flight attendants subsequently reported Mr. Hill to the police. The police approached Mr. Hill and handcuffed him for officer safety after he pulled his arm away from the officer.

Mr. Hill's actions were clearly a significant — although certainly not the only — cause of the bizarre series of events that occurred on the flight. The flight attendants' responses to the situation certainly were not ideal, but they were not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." See id. Accordingly, the Court grants U.S. Airways' Motion for Summary Judgment of this claim.

### iii. Negligent Infliction of Emotional Distress

The elements of a claim for negligent infliction of emotional distress are as follows:

> (1) the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock fairly contemporaneous with the accident.

Wargelin v. Sisters of Mercy Health Corp., 149 Mich. App. 75, 81 (1986) (quotations omitted). Accordingly, courts "decline to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." Duran v. Detroit News, Inc., 200 Mich. App. 622, 629 (1993); see Hesse v. Ashland Oil, Inc., 466 Mich. 21, 24 n.6 (2002) (noting that negligent infliction of emotional distress is sometimes referred to as bystander liability and stating that the Michigan Supreme Court "has never recognized the existence of such a cause of action").

This claim would appear to only apply to Mrs. Hill because she observed the alleged conduct to which Mr. Hill was subjected. See Duran, 200 Mich. App. at 629. But, for the same reasons that this conduct does not give rise to a claim of IIED for Mr. Hill, the Court finds that it also is not a sufficiently "serious" threatened or inflicted injury to give rise to a negligent infliction of emotional distress cause of action. See Wargelin, 149 Mich. App. at 81. Accordingly, the Court grants summary judgment to U.S. Airways on this claim.

   iv. Negligence

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." Case v. Consumers Power Co., 463 Mich. 1, 6 (2000) (footnote omitted).

> The question of duty turns on the relationship existing between the actor and the injured person. In determining whether a duty exists, courts look to different variables, including: foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach.

Krass v. Tri-County Sec., Inc., 233 Mich. App. 661, 669-70 (1999) (citations omitted).

  Plaintiffs' negligence claim fails because they have failed to show that they were harmed as a result of Defendant's violation of a duty it owed to Plaintiffs. The flight attendants did fail to move the Mr. Hill from his broken seat before takeoff, which was required by federal regulations, but this failure was not the proximate cause of the alleged harm to Mr. Hill; instead, the proximate cause was either Mr. Hill's initial failure to comply with the flight attendant's request for him to move seats before landing or the actions of Mr. Hill and the flight attendants following Mr. Hill's initial refusal to move seats.

  To the extent that Plaintiffs are claiming that the flight attendants were negligent in their actions following Mr. Hill's initial refusal to switch seats, Plaintiffs have failed to allege and show the breach of any specific duty that Defendant had to Plaintiffs. Thus, Defendant is entitled to summary judgment of this claim.

**V.     CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

                                    s/Marianne O. Battani
                                    MARIANNE O. BATTANI
                                    UNITED STATES DISTRICT JUDGE


DATED: November 25, 2009


**CERTIFICATE OF SERVICE**

     Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                    s/Bernadette M. Thebolt
                                    DEPUTY CLERK